IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EVELYN J. PARKER,            )
                             )
        Plaintiff,           )
                             )
    v.                       )        1:10-CV-650
                             )
CAROLYN W. COLVIN,           )
Acting Commissioner of Social)
Security,[1]                 )
                             )
        Defendant.           )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Evelyn J. Parker, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court has before it the certified administrative record and the parties have filed cross-motions for judgment.

**I.    Procedural History**

Plaintiff applied for DIB and SSI on January 2, 2008, alleging a disability onset date of January 12, 2007. (Tr. 117-23.) The applications were denied initially and upon reconsideration. (Tr. 61-80.) Plaintiff requested a hearing de novo before an Administrative

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Law Judge ("ALJ"). (Tr. 84-88.) Present at the hearing, held on December 21, 2009, were Plaintiff, her attorney, and a vocational expert ("VE"). (Tr. 28-60.) On February 8, 2010, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. (Tr. 8-22.) On June 23, 2010, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-7.)

In making this disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2011.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since January 12, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: affective disorder, anxiety disorder, personality disorder and headaches (20 CFR 404.1520(c) and 416.920(c)). . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with additional limitations of she should avoid concentrated exposure to hazards such as moving machinery and unprotected heights. Additionally, [Plaintiff] is limited to unskilled work, performed at a non-production pace, in a job that involves only limited interpersonal contact with others.

(Tr. 13-15.)

In light of the findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff could not perform her past relevant work as a cashier and tax preparer. (Tr. 20.) Based

2

on the VE's testimony, and after considering Plaintiff's age, education, work experience and RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 21 (citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).) Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Act, at any time from January 12, 2007, through the date of his decision, February 8, 2010. (Tr. 22.)

## II.     Standard of Review

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hines*, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). "In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is

3

disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability," *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" *id.* (quoting 42 U.S.C. § 423(d)(1)(A)). "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." *Hall*, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." *Id.* (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Commissioner of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] The framework for

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." *Hunter*, 993 F.2d at 35 (internal

decision-making is well established in the case law and the court will not repeat it here. See e.g., *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990); *Mastro*, 270 F.3d at 177-180; *Hall*, 658 F.2d at 264-65; *Hines*, 453 F.3d at 567.

**III.     Assignments of Error**

In this case, the ALJ found that Plaintiff met her burden at step one. (Tr. 13.) At step two, he determined that Plaintiff suffered from four severe impairments: affective disorder, anxiety disorder, personality disorder and headaches. (*Id.*) The ALJ found at the third and fourth steps that these impairments limited Plaintiff to medium work with restrictions which precluded her from returning to her past relevant work (Tr. 13-20), but he ultimately concluded at step five, based on the VE's testimony, that Plaintiff could perform other jobs available in the community and was therefore not disabled (Tr. 21-22).

Plaintiff argues, however, that substantial evidence fails to support the Commissioner's findings at step four and five of the SEP. (Docket Entry 11 at 5-18.) Specifically, she contends that the ALJ failed to properly evaluate opinions from a treating psychiatrist, an examining psychiatrist, and an examining psychologist. (*Id.* at 5-16.) She additionally contends that the ALJ failed to include the limitations he had previously found plaintiff to have in social functioning and maintaining concentration, persistence, and pace in his formulation of Plaintiff's RFC at step four or in his hypothetical questions to the vocational expert ("VE") at step five and, thus, that the hypotheticals failed to fairly set out all of Plaintiff's limitations in violation of *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). (Docket Entry 11 at 16.) Finally, Plaintiff asserts that the ALJ

citations omitted).

improperly evaluated her credibility in violation of Social Security Ruling 97-6p and *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). (*Id.* at 16-18.) Defendant contends otherwise and urges that substantial evidence supports the ALJ's determination that Plaintiff was not disabled. (Docket Entry 13 at 4-11.)

### A. Evaluation of Medical Opinion Evidence

Plaintiff first claims that the ALJ erred by failing to provide "legally sufficient reasons" for rejecting the opinions of Plaintiff's treating psychiatrist Dr. Elizabeth Pekarek, examining psychiatrist Dr. Harold Frazier, and consultative examining psychologist Dr. Scott Schell. (Docket Entry 11 at 12-13.) Plaintiff argues that the ALJ's failure to provide sufficient reasons violated 20 C.F.R. § 404.1527(d) and Social Security Rulings 96-2p and 96-5p.

#### 1. Dr. Elizabeth Pekarek

Plaintiff contends that one of her treating psychiatrists, Dr. Elizabeth Pekarek, consistently rated Plaintiff's Global Assessment of Functioning ("GAF")[3] as below 50, which Plaintiff maintains indicates "an inability to work," citing *Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003). Plaintiff asserts that the ALJ's bases for discounting Dr. Pekarek's opinion – because it was "inconsistent with treatment notes from Sandhills Center" and "with the rest of the evidence, including the DDS assessment and the psychiatrist who examined [Plaintiff] in February 2009" –

---

[3] The GAF is a numeric scale from 0 to 100 representing a clinician's judgment of an individual's social, occupational and school functioning "on a hypothetical continuum of mental health-illness." *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed., Am. Psychiatric Ass'n, text revision 2000) ("DSM-IV"). A GAF of 41 to 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34. The Fifth Edition of the DSM published in 2013 has modified the multiaxial assessment system espoused by the DSM-IV, including discontinuing use of the GAF. *Diagnostic and Statistical Manual of Mental Disorders*, 16 (5th ed., Am. Psychiatric Ass'n 2013) ("DSM-V").

6

are legally insufficient and not supported by substantial evidence. Plaintiff also maintains that there was no "psychiatrist [who] examined [Plaintiff] in February 2009," and that the ALJ must have been referring to the state agency non-examining psychological consultant Dr. Salley S. Jessee who completed a mental RFC form and Psychiatric Review Technique Form ("PRTF") regarding Plaintiff on February 7, 2009. Plaintiff asserts that as a non-examining source, Dr. Jessee's opinions should have been discounted by the ALJ, because they were "totally contradicted by other evidence in the record," including reports from Dr. Pekarek and Dr. Harold Frazier, citing *Martin v. Secretary*, 492 F.2d 905 (4th Cir. 1974) and *Hall v. Harris*, 658 F.2d 260, 266 (4th Cir. 1981). These contentions lack merit.

The treating physician rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, on the ground that treating sources "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2).[4] The rule also recognizes, however, that not all treating source opinions deserve such deference. First, the nature and extent of the treatment relationship may temper the weight afforded. 20 C.F.R. § 404.1527(d)(2)(ii); 20 C.F.R. § 416.927(d)(2)(ii). Further, a treating source's opinion controls only if well-supported by medical signs and laboratory findings

---

[4] Effective March 26, 2012, a regulatory change renumbered, but did not impact the substantive language of, the treating physician rule. 77 Fed. Reg. 10651-10657 (Feb. 23, 2012). Given that all material events in this action precede this nominal regulatory change, this Memorandum Opinion and Order will make use of the pre-March 26, 2012 citations.

and consistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2)-(4); 20 C.F.R. § 927(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *accord Mastro*, 270 F.3d at 178. Social Security Ruling 96–2p and Social Security Ruling 96-5p are consistent with these regulations.

In this case, the ALJ complied with the regulations and SSR 96-2p and SSR 96-5p by providing sufficient reasons for his decision to discount Dr. Pekarek's opinion regarding Plaintiff's GAF scores. Dr. Pekarek treated Plaintiff on three occasions in 2009 – July 15, August 14, and October 14, assigning Plaintiff GAF scores of 45, 47, and 47 respectively. (Tr. 499-501, 510.) In assessing Dr. Pekarek's opinion, the ALJ first found that Dr. Pekarek's opinion was "inconsistent with the treatment notes from Sandhills Center for Mental Health." (Tr. 19.) This finding is supported by substantial evidence. Treatment records from the Sandhills Center spanning from July 24, 2008, to June 1, 2009, show that Plaintiff was cooperative and calm with normal thought processes (Tr. 404), "slightly depressed" (Tr. 417), "doing fairly well" (Tr. 467), "sleeping better" (Tr. 468), "without any major complaints" other than "feeling overly sedated" by her medication (Tr. 534) and "pleasant", "calm and composed" (Tr. 536). On June 1, 2009, Dr. John Haggerty noted that Plaintiff's "mood has been stable" and that "she has not required hospitalization for over a year." (*Id.*) In fact, as noted by the ALJ (Tr. 19), none of the records from the Sandhills Center recorded any suicidal ideation or other "serious symptoms" as is required by a GAF score in the 41 to 50 range.

The ALJ next observed that Dr. Pekarek's opinion was "inconsistent with the rest of the evidence, including the DDS assessment and the psychiatrist who examined [Plaintiff] in February

8

2009." (Tr. 19.)  Again, the ALJ's finding is supported by substantial evidence.  While the phrase "rest of the evidence" is general, the ALJ did discuss the medical evidence of record in a fair degree of detail in his decision.  (Tr. 16-18.)  After Plaintiff's two instances of involuntary commitment in January and November 2007, there are no treatment records other than Dr. Pekarek's which document GAF scores below 50.  Moreover, Dr. Nancy Y. Herrera completed a PRTF on August 7, 2008, and opined that Plaintiff had mild limitation in her daily activities, and moderate limitation in her social functioning and concentration, persistence and pace.  (Tr. 389.)  Similarly, Dr. Jessee opined on February 7, 2009, that Plaintiff had moderate limitation in all three categories.  (Tr. 444.)[5]  Neither of these reports supports Dr. Pekarek's GAF scores of 45 and 47, which indicate "serious" impairment in social, occupational and school functioning.  The ALJ thus provided sufficient reasons to support his decision to discount Dr. Pekarek's opinion in accordance with the applicable regulations, Social Security Rulings and Fourth Circuit case law.

2. Dr. Scott T. Schell

Plaintiff asserts that the ALJ violated 20 C.F.R. § 404.1527(d) and SSR 96-5p by "ignor[ing] Dr. Schell's conclusions that [Plaintiff]'s ability to do even simple repetitive tasks and tolerate the stress and pressure associated with work were 'adversely influenced by a sense of anxiety and difficulties in concentration.'"  (Docket Entry 11 at 13-14, citing Tr. 369.)  This contention lacks merit.

---

[5] Contrary to Plaintiff's assertion, the ALJ was under no obligation to discount Dr. Jessee's assessment, as it was not "totally contradicted" by any fully credited record evidence.  Plaintiff cites Dr. Pekarek's opinion and Dr. Harold Frazier's opinion as examples of evidence which "totally" contradict Dr. Jessee's assessment.  (Docket Entry 11 at 15.)  However, as noted above, the ALJ was correct to discount Dr. Pekarek's opinion, and as will be discussed below, the ALJ was similarly correct to discount Dr. Frazier's opinion.

9

Dr. Schell, a consultative psychologist, examined Plaintiff on July 31, 2008. (Tr. 367-69.) In his decision, the ALJ noted as follows:

> Scott T. Schell, M.D., P.A., examined the claimant on July 31, 2008 and completed a consultative examination. He rendered the following diagnosis for the claimant on this date: Major depression, recurrent with psychosis; Generalized anxiety disorder, Personality disorder, not otherwise specified, History of migraine headaches and history of inactive asthma, severe with work and social components and GAF rating of 70 within the past year and 64 at present.
>
> He further commented that the claimant is capable of handling her own funds. She was encouraged to continue in outpatient therapy. The claimant was driven to the examination by her daughter. She appeared tense and uncomfortable during the examination. She told the doctor that she enjoyed playing cards with her son and was able to drive short distances. She relied on her children to do most of the household activities and had recently began [sic] attending church services regularly. Dr. Schell reported that she had a past history of auditory/visual hallucinations, but none currently. No suicidal ideation currently. He noted that she had a tense affect, and that she was able to sustain concentration and was oriented with a normal I.Q.

(Tr. 17.) Thus, it is clear that the ALJ carefully reviewed Dr. Schell's report. While the ALJ did not specifically discuss (or specifically reject) Dr. Schell's opinion that Plaintiff's ability to perform simple, repetitive tasks and to tolerate the stress and pressure of work were "adversely influenced" by her anxiety, difficulty concentrating and discomfort in the presence of others, this does not equate to a conclusion that the ALJ "ignored" the opinion. An ALJ need not discuss every finding in each piece of evidence in the record in issuing decisions on disability. *See, e.g.*, *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995).

Moreover, and more importantly, the ALJ's RFC assessment, which limits Plaintiff to unskilled work performed at a non-production pace and involving only limited interpersonal contact with others, is consistent with Dr. Schell's opinion that Plaintiff's symptoms "adversely influence" her ability to perform simple, repetitive tasks, form working relationships with others

10

and tolerate work stress and pressure.[6] (Tr. 15, 369.) "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions . . . ." Social Security Ruling 85-15, *The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments*. Furthermore, the regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568; 20 C.F.R. § 416.968. The Court finds the ALJ's evaluation of Dr. Schell's opinion to be supported by substantial evidence.

        3.     Dr. Harold L. Frazier

Plaintiff contends that the ALJ also violated 20 C.F.R. § 404.1527(5) and SSR 96-5p by failing to give sufficient reasons for discounting the opinion of private consultative examining psychiatrist Dr. Harold Frazier. Plaintiff asserts that the ALJ rejected Dr. Frazier's opinion, in part, because the ALJ incorrectly believed it conflicted with Dr. Schell's opinion. (Docket Entry 11 at 6, 13.) Plaintiff's contention lacks merit.

Dr. Frazier examined Plaintiff at the behest of her attorney on December 18, 2009, three days before her hearing before the ALJ. (Tr. 541-47.) Dr. Frazier opined that Plaintiff had been disabled since January 2007 because her major depressive disorder met the criteria of Listing 12.04 and her Panic Disorder met the criteria of Listing 12.06. (Tr. 547.) The ALJ noted the following with regard to Dr. Frazier's report:

---

[6] The consistency of the ALJ's RFC formulation with Dr. Schell's opinion is all the more clear when viewed through the lens of Dr. Schell's GAF scores for Plaintiff. Dr. Schell rated Plaintiff's GAF as 70 for the prior year and 64 at the time of his evaluation (Tr. 369), which indicated only "mild" difficulties in occupational and social functioning. DSM-IV 34.

> I give little weight to the evaluation by Dr. Harold L. Frazier . . . . I note that [Dr. Schell's] evaluation . . . gives a GAF score of 64 at present with highest in the past year of 70. I believe that this more accurately reflects the degree of [Plaintiff's] impairment as opposed to Dr. Frazier's report.
>
> I acknowledge that Dr. Frazier opined that [Plaintiff] is disabled. Careful consideration has been given to this opinion, an opinion that is inconsistent with the evidence of record. However, because this opinion about [Plaintiff]'s ability to perform past work is on an issue reserved to the Commissioner and not an opinion as to the nature and severity of [Plaintiff]'s impairments, it cannot be accorded special weight (20 C.F.R. 404.1527(e) and SSR 96-5p).

(Tr. 20.) The ALJ was correct to note that Dr. Frazier's opinion that Plaintiff is disabled is on an issue reserved for the Commissioner and is, therefore, not entitled to special weight. 20 C.F.R. § 404.1527(e); 20 C.F.R. § 416.927(e). The ALJ was also correct that Dr. Frazier's opinion is inconsistent with other evidence of record and was, therefore, entitled to "little weight." *See* 20 C.F.R. § 404.1527(d)(3); 20 C.F.R. § 416.927(d)(3) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.") The ALJ thoroughly reviewed the evidence of record in his opinion (Tr. 16-18), and the record is replete with evidence that conflicts with Dr. Frazier's report – the PRTFs completed by Drs. Herrera and Jessee (Tr. 379-92, 434-47), the consultative examination by Dr. Schell (Tr. 367-69), and the treatment notes from Sandhills Center (Tr. 398-417, 466-69, 534-36), to name just a few.[7] Substantial evidence supports the ALJ's evaluation of Dr. Frazier's opinion.

---

[7] Dr. Frazier's report noted a number of inconsistencies in Plaintiff's self-reports. For example, he noted that Plaintiff drove herself from her home in Star, North Carolina to his office in Chapel Hill, North Carolina (Tr. 541) (a one-way distance of approximately 75 miles), that she reported getting up at 6:20 a.m. to help her children (Tr. 544), that she does yard work, watches television, goes to church and is able to feed and dress herself (Tr. 545), that she does not take afternoon naps and that she is able to do her chores with rests between tasks (Tr. 544). Dr. Frazier noted that this report conflicted with a prior report where Plaintiff claimed she relied on her children to do chores and slept or rested most of the day. (Tr. 545.) In fact, Dr. Frazier noted that Plaintiff tended to

### B. RFC and Hypothetical Questions

Plaintiff asserts that the ALJ's RFC assessment and, in turn, hypothetical questions to the VE failed to take into account certain restrictions found by the ALJ. (Docket Entry 11 at 15-16.) Specifically, the ALJ credited the state agency physicians' findings that Plaintiff had moderate limitation in concentration, persistence, and pace, and the ALJ then defined "moderate" to entail "low stress activity" involving "little decision making" and "little changes in work process or work setting." (Tr. 19, 389, 444.) Plaintiff contends that the ALJ's RFC formulation and hypothetical questions failed to include these limitations in violation of *Walker*, 889 F.2d at 50, and that a remand is required to have a VE address these additional limitations. (Docket Entry 11 at 16.) Plaintiff's claim lacks merit.

In his RFC formulation, the ALJ limited Plaintiff to unskilled work at a non-production pace with only limited interpersonal contact. (Tr. 15.) As discussed above, unskilled work "needs *little or no judgment* to do simple duties that can be learned on the job in a short period of time," 20 C.F.R. § 404.1568; 20 C.F.R. § 416.968 (emphasis added), which incorporates the ALJ's limitation to "little decision making." Moreover, the limitation to non-production pace and little interaction with others incorporates the restriction of "low stress activity." With regard to "little changes in work process or work setting," it is true the ALJ did not specifically include such a limitation in his RFC formulation or hypothetical questions to the VE. Nevertheless, the ALJ's

---

minimize the information she gave him, folded her arms and gave short, defensive answers. (*Id.*) Dr. Frazier questioned the veracity of her answers at times during his evaluation. (*Id.*) Dr. Frazier's report itself contained some internal inconsistencies as well. For example, he concluded that her memory and concentration were adequate and that she was able to take care of her daily activities, (Tr. 546), and yet he elsewhere concluded that Plaintiff has "marked" limitations in daily activities and concentration, persistence, and pace. (Tr. 547.)

13

omission does not warrant remand, because the hand packager position cited by the VE as a suitable job for Plaintiff adequately incorporates this limitation. The Dictionary of Occupational Titles describes the Hand Packager position, number 920.587-018, as involving "repetitive" work, which incorporates the limitation to "little changes in work process or work setting." *Dictionary of Occupational Titles*, 920.587-018 (4th ed. rev. 1991); *see also Jarvis v. Astrue*, No. 09-CV-1621, 2011 WL 777214, at *2 (W.D. La. Feb. 8, 2011) (unpublished) (ALJ credited VE's testimony that hand packager was suitable job for individual whose RFC included, *inter alia*, limitation that he could only deal occasionally with changes in work process and environment). Thus, the Court concludes that the ALJ's omission in formulating Plaintiff's RFC is not reversible error, and that the Commissioner's finding at step five, that there were jobs available in the national economy that Plaintiff could perform, is supported by substantial evidence.

### C. Evaluation of Credibility

Plaintiff alleges that the ALJ violated SSR 96-7p in his evaluation of her credibility. (Docket Entry 11 at 16-18.) More specifically, Plaintiff claims that the ALJ's finding that Plaintiff's statements about her symptoms were "not credible to the extent they are inconsistent with the . . . residual functional capacity assessment" is "meaningless boilerplate." (*Id.* at 17.) Plaintiff also faults the ALJ for relying exclusively on his observation of Plaintiff at the hearing to discredit her testimony and other statements about her symptoms. (*Id.* at 17-18.) Plaintiff's allegation lacks merit.

Social Security Ruling 96-7p, *Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, as applied by the Fourth Circuit in *Craig*, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First,

there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig*, 76 F.3d at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an evaluation of the intensity and persistence of the claimant's pain, and the extent to which it affects his or her ability to work. *Craig*, 76 F.3d at 595. In making this evaluation, the fact finder:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

*Id.* (internal citations and quotation marks omitted). SSR 96–7p further instructs the ALJ to "consider the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" SSR 96-7p also provides that an ALJ "is not free to accept or reject the individual's complaints solely on the basis of . . . personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements." Importantly, an ALJ's credibility determination is entitled to "substantial deference." *Sayre v. Chater*, No. 95-3080, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (unpublished).

Here, the ALJ found as to part one of the inquiry that Plaintiff had impairments that reasonably could have produced the alleged symptoms. (Tr. 19.) At part two of the *Craig* analysis, the ALJ found that Plaintiff's statements concerning the intensity, persistence and

limiting effects of these symptoms were not credible to the extent they conflicted with the RFC assessment. (*Id.*) In making this finding, the ALJ noted that "the longitudinal record indicates [Plaintiff] did have psychotic episodes in 2007 but has stabilized since then and has been functioning well on her medications." (*Id.*) The ALJ then discussed pertinent medical records that supported the ALJ's assertion that Plaintiff's mental condition had stabilized, including records showing that by January 11, 2008, she was not actively psychotic.[8] (Tr. 19.) The ALJ further noted that the post-2007 records showed that Plaintiff was slightly depressed with no suicidal ideation (Tr. 467), doing well with her current regimen of medications (Tr. 537), and organized and goal directed in her thinking with no overt signs of psychosis (Tr. 536). (Tr. 19.) The ALJ further noted that the state agency physicians had only found mild and moderate limitation in her daily activities, social functioning, and concentration, persistence and pace.[9] (*Id.*) It was only after all of these findings that the ALJ observed:

---

[8] The ALJ also found that the claimant was "rated fair to good in all assessment categories." It is not clear from the ALJ's decision where this statement can be found in or derived from the record. (Tr. 19.) The record at page 312 of the transcript does not appear to contain such an assessment, and the ALJ does not cite to any other record evidence in support of this finding. Nevertheless, no remand is warranted where other substantial evidence in the record supports the ALJ's conclusion that Plaintiff's mental impairments stabilized after 2007. (*See, e.g.*, Tr. 363, 368-69, 395, 404, 416, 417, 467, 468, 482, 506, 534, 537); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (holding that "[n]o principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Camp v. Massanari*, No. 01-1924, 2001 WL 1658913, at *1 (4th Cir. Dec. 27, 2001) (unpublished); *Hawley v. Astrue*, No. 1:09CV246, 2012 WL 1268475, at *4 (M.D.N.C. Apr. 16, 2012) (unpublished)(Auld, M.J.), *adopted* 2012 WL 3584340 (M.D.N.C. Aug. 20, 2012) (unpublished) (Beaty, J.).

[9] Significantly, both state agency physicians who completed mental RFC forms and PRTFs regarding Plaintiff, Drs. Herrera and Jessee, concluded that Plaintiff was only "partially credible." (Tr. 391, 433.) Dr. Frazier also questioned her veracity at times. (Tr. 545.)

16

> [Plaintiff] had no difficulty testifying whatsoever. There were no apparent concentration deficits. She seemed a fairly intelligent young lady and has a background doing tax preparation.

(*Id.*) Thus, the ALJ did not exclusively rely on his observations of Plaintiff at the hearing in discounting her credibility. The ALJ properly evaluated Plaintiff's credibility, and substantial evidence supports his findings.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is affirmed, that Plaintiff's Motion for Judgment Reversing Judgment of the Commissioner or Remanding the Cause for Rehearing (Docket Entry 10) is **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) is **GRANTED**, and that this action is dismissed with prejudice.

This 30th day of August, 2013.

_____
UNITED STATES DISTRICT JUDGE